## MICHAEL FINN *vs.* PATRICK DONAHUE.

Under the statute forbidding secular business on the Lord's day, a loan of money made on that day can not be recovered.
Nor can it be recovered in an action of general assumpsit upon a demand afterwards made, as money of the plaintiff in the hands of the defendant.
A party can not be permitted to trace his title through an illegal act.

ASSUMPSIT for money had and received, brought originally before a justice of the peace and appealed by the defendant to the Superior Court, where it was tried on the general issue closed to the court, before *Pardee, J.*

The court found that the money sought to be recovered was the sum of '$50, which was loaned by the plaintiff to the defendant on a Sunday in June, 1867, in the afternoon, before the setting of the sun; that the plaintiff took no note; and that afterwards, on a week day, he demanded the money of the defendant, who refused to pay it, and that it had never been paid.

On these facts the court rendered judgment for the defendant, and the plaintiff brought the record before this court by a motion in error.

*Hitchcock,* for the plaintiff.

1. The defendant has the money of the plaintiff, for which in equity and good conscience he ought to account to him. Where money is thus holden, this action lies to recover it by the rightful owner.

2. If the contract of loan was void by the statute of the state, then it follows that the money remained the property of the plaintiff, and the defendant is a mere depositary of it. The plaintiff after demand and refusal can recover it in this action. *Dodson* v. *Harris*, 10 Ala., 566; *Brown* v. *Timmany*, 20 Ohio, 81.

*Fyler*, for the defendant.

HINMAN, C. J.   The plaintiff's demand was for the sum of fifty dollars loaned to the defendant on a Sunday in the month of June, 1867; and the question in the case is, whether the plaintiff can recover for a sum of money loaned before the setting of the sun on the Lord's day.   And we are of opinion that he can not.

· Our statute in relation to the keeping of the Lord's day provides, among other things, "that no person shall do any secular business, work or labor, works of necessity and mercy excepted, on the Lord's day, between the rising of the sun and the setting of the same, under a penalty of not less than one nor more than four dollars."   Section 1st of the Act for the due observance of the Lord's day; Gen. Statutes, p. 643. This, of course, renders the contract of loan on that day an illegal contract.   And if a party claiming a right to recover a debt is obliged to trace his title or right to the debt through an illegal contract he can not recover, because he can not be allowed to prove the illegal contract as any foundation for his right of recovery.   *Ex turpi causa non oritur actio* is a maxim which applies as well to contracts which are contrary to the policy of a statute, as to those which are admitted to be illegal in consequence of their immoral tendency.   And a contract made on Sunday is opposed to the positive prohibition of our statute.   No doubt it is true, as remarked by Lord Mansfield in the case of *Holman* v. *Johnson*, Cowper, 343, that "it

sounds very ill in the mouth of a defendant, that a contract is immoral or illegal as between him and a plaintiff. But it is not for him that the objection is allowed. It is because the court will not lend its aid to one who founds his cause of action upon an illegal act." Our statute is very similar to the English statute of 29 Charles I., Ch. 7, for the better observance of Sunday. That act provides "that no tradesman, artificer, laborer, or other person whatever, shall do or exercise any worldly labor, business or work of their ordinary callings, upon the Lord's day, or any part thereof; works of necessity and charity only excepted." Under that statute it was held that a horse dealer could maintain no action on a contract for the sale and warranty of a horse made upon a Sunday. And it was said by Bailey, J., in the case of *Fennell* v. *Ridler*, 5 Barn. & Cress., 406, that the statute was entitled to such a construction as would promote the ends for which it was passed, and that the act "could not be construed according to its spirit, unless it is so construed as to check the career of worldly traffic." And from the number of authorities cited upon the defendant's brief, with a total absence of any thing to the contrary to which we are referred by the plaintiff, we are satisfied that the plaintiff can not recover. Indeed, it is not claimed by the plaintiff that the loan on the Sunday was a lawful act. It is said, however, to show that the defendant has in his hands fifty dollars of the plaintiff's money which the plaintiff ought in justice to recover of him upon the common counts. But the principle of law is, that a party can not be permitted to trace his title through an illegal act. Now money, it is correctly said, "has no ear-mark." This suit is not brought for the identical money loaned to the defendant. The plaintiff claims it because, as he says, the defendant owes it to him. And to make out his case he is obliged to resort to proof of the illegal loan on a Sunday. In no other way can he show that the defendant has his money. And in showing this he shows himself to have been engaged in the illegal transaction. If instead of relying upon a parol promise to re-pay the money he had taken a note or other written security for it, no one would doubt that such security would have been

Finn *v.* Donahue.

so tainted with the illegality as to render it uncollectible. And can there be any difference in respect to the legality of the act arising from the circumstance that the contract was not reduced to writing? The principle that a party can not recover who is obliged to trace his title through an illegal act was fully recognized in the case of *Phalen* v. *Clark*, 19 Conn., 421, and it was there said to be well settled that if a plaintiff requires any aid from an illegal transaction to establish his demand he can not recover. And the principle as there stated has never been doubted, whatever may have been thought of the application of it in that case.

For these reasons we advise the Superior Court to render judgment for the defendant.

In this opinion the other judges concurred.