ISADORE ROMANOFF *vs.* MICHAEL DeSANTO.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The plaintiff brought an action for breach of a contract to exchange real estate, which had been repudiated by the defendant prior to the time for its performance. The trial court found as a conclusion of fact that the plaintiff was ready, willing and able to perform.

*Held* that this conclusion was not inconsistent with subordinate findings to the effect that, on the date for performance, the plaintiff's title was not in accordance with the agreement, since it did not follow that the plaintiff would not have tendered a proper title if the defendant had not previously renounced his obligations; and after the defendant's definite refusal to perform, the plaintiff was not bound to go to the expense and trouble of useless preparation to carry out his agreement.

Nor was the trial court's conclusion inconsistent with the fact that a greenhouse on the premises was subject to a lease for one month, a fact which was not mentioned in the agreement, since it appeared that the existence of the lease was well known to the defendant and was considered by both parties as too insignificant to be described as an incumbrance, in their contract, which did, however, contain a provision for an adjustment of "all" rentals at the passing of title.

The admission of evidence concerning the arrangement between the parties with respect to this lease did not violate the parol-evidence rule, which is not applicable to subsidiary and collateral oral agreements supplementary to the written contract where it is not the intention of the parties that their entire agreement shall be embodied in the instrument.

The trial court's conclusion that the plaintiff was entitled to recover commissions which he had paid to real-estate agents was attacked by the defendant on the ground that the plaintiff was not required to pay these amounts until an exchange of the properties had been effected. *Held* that the defendant's claim was not supported by the contract which, reasonably interpreted, obligated the plaintiff to pay the commissions as soon as the parties were brought together in an agreement for the exchange.

Argued October 29th—decided December 1st, 1924.

ACTION to recover damages for an alleged breach by the defendant of a written agreement to exchange pieces of real estate, brought to and tried by the Superior Court in New Haven County, *Avery, J.;* facts found and judgment rendered for the plaintiff for $297, and appeal by the defendant. *No error.*

The complaint in this action alleges a written agreement between the parties for an exchange of certain pieces of real property in New Haven, readiness on the part of the plaintiff to perform, defendant's refusal so to do, and demands damages resulting therefrom. All

of these allegations, except the execution of the agreement, are put in issue by the first defense of the answer, which also contains a second defense setting up fraud in the inception of the agreement, which latter defense was not pressed and forms no part of the case before us on appeal.

The court finds that on May 10th, 1923, the plaintiff agreed in writing to deed to the defendant certain lands known as 361 Orchard Street and 24 Kensington Street, on or before the fifth day of June, 1923, together with all buildings thereon, and that the plaintiff further agreed on that day to pay $1,000 to the defendant. The defendant, in consideration thereof, agreed to convey by deed to the plaintiff on the fifth day of June, 1923, certain property known as 72–74–76 Daggett Street, together with all buildings thereon, and also to execute and deliver to the plaintiff a mortgage for $3,000 to the plaintiff on the property known as 361 Orchard Street, and a second mortgage on this property for $2,400; also a first mortgage for $2,500 on the property known as 24 Kensington Street, and a second mortgage for $1,600 on the same, the terms of which various mortgages are more particularly described in the agreement before mentioned, an exhibit in the case.

The plaintiff, between May 10th, 1923, and June 5th, 1923, made all necessary preparations to carry out the terms of the agreement in so far as they threw any obligation upon him. He secured, in the name of an agent who represented him, the title to the property located at 361 Orchard Street and 24 Kensington Street, made arrangements to execute mortgages on the same in accordance with the terms of the agreement, and was ready, able and willing to carry out on his part the terms of the same. The plaintiff employed an attorney to prepare a title search of the premises

located on Orchard Street and Kensington Street, and some of the deeds were drawn, but no tender was made of the deeds so drawn or of the money to be paid by the plaintiff on June 5th, 1923, for the reason that prior to that date the plaintiff had been advised by the defendant that the latter repudiated his contract and utterly declined to carry it out. No effort was made by the defendant to carry out the terms of his agreement, at any time subsequent to the signing thereof. On or about the first day of June, 1923, an attorney, whom the defendant had employed in connection with the transfer of these premises, advised the plaintiff's attorney that the defendant had not decided whether or not he would carry out his contract. The defendant himself, both before and after June 1st, 1923, notified the plaintiff that he, the defendant, would not carry out the contract.

On the property located at Kensington and Orchard streets was a greenhouse which was rented to one Bruce until the last day of June, 1923. This fact was mentioned by the parties prior to the signing of the agreement, and the occupancy of Bruce from the fifth day of June, 1923, to the last day of June, 1923, was not considered of sufficient importance to be mentioned in the agreement as an incumbrance on the premises. It was agreed by the parties that "taxes, interest, insurance, rents and water rates would be adjusted as of date of transfer." The rental of the greenhouse from June 5th, 1923, to the last day of June, 1923, was by the consent of the parties included in the adjustment of rents. On May 12th, 1923, the defendant executed a lease of this greenhouse to another party for a term of years to commence July 1st, 1923.

The plaintiff was obligated to expend the sum of $250 for the services of real-estate agents in negotiating the transfer of the properties in accordance with the

terms of Exhibit A, and the plaintiff in connection therewith was obliged to expend $47.50 for the services of an attorney in drawing papers, searching the title, etc.   It does not appear that the plaintiff lost anything, considering the difference of the value of the properties as of June, 5th, 1923, the date when the contract was to be carried out.

The negotiations with the defendant leading up to this agreement were conducted, in behalf of the plaintiff, by one Henry Morris who acted as his agent.   The property agreed to be deeded by the plaintiff to the defendant at the date of the signing of the agreement, and until June 1st, 1923, stood in the name of one James Bruce who lived upon the premises and conducted thereon a greenhouse.   On the fifteenth day of February, 1923, James Bruce entered into an agreement to sell these properties to one Adolph Perlroth and to deliver a warranty deed thereof on or before June 1st, 1923. This agreement between Bruce and Perlroth among other things, contained the following clause:   "Mr. Bruce reserves the right to use greenhouse and occupy own house to June 30, 1923, rent as adjusted." After signing his agreement with Bruce, to wit, on April 27th, 1923, said Adolph Perlroth agreed in writing to sell and convey these properties to one Harry J. Alenier on June 1st, 1923, for the sum of $11,800, which agreement contains the following clause:   "At the time of said transfer said properties will be free from all incumbrances whatsoever, except building lines, if established, and current taxes, which taxes shall be subject to the adjustments hereinafter mentioned." On the tenth day of May, 1923, Alenier assigned to Isadore Romanoff, the plaintiff, all the right, title and interest which he had or ought to have had in this agreement, which assignment is endorsed and executed upon the agreement itself.   On June 1st, 1923, said James

Bruce, by warranty deed, deeded the premises to Harry J. Alenier. The incumbrances upon the premises are stated in said deed as follows: "Said premises are subject to building lines if established, a mortgage on the first piece for $1,300 to Wallie O. Weiss, the mortgage on the second piece now amounting to $1,000 to the National Savings Bank." On June 1st, Harry J. Alenier deeded the premises by warranty deed to Henry Morris, personally, a copy of which deed was introduced in evidence. The incumbrances then standing on the premises are described in the deed from Alenier to Morris as follows: "Said premises are subject to building lines if established; a mortgage on the first piece for $3,500 to Adolph Perlroth; a mortgage on the first piece for $2,400; and a mortgage for $2,500 on the second piece; a mortgage on the second piece for $1,600; and taxes on the list of 1923, the right of James Bruce to occupy part of said premises until June 30, 1923, which mortgages and taxes the grantee assumes and agrees to pay as part consideration for this deed." The mortgages described in this deed were executed and delivered by Alenier to Perlroth before his conveyance of the premises to Henry Morris. The premises on the fifth day of June stood in the name of Henry Morris, personally, and had upon them the incumbrances described above.

The memorandum of decision and the exhibits in the case are made a part of the finding.

During the arguments and before the same were concluded, the court permitted both parties to give evidence about the Bruce lease and the negotiations between the parties in respect thereto.

The court rendered judgment for the plaintiff to recover $297 damages, from which defendant appeals.

The reasons of appeal and also further facts appear in the opinion.

*George W. Crawford,* for the appellant (defendant).

*Robert J. Woodruff* and *Claude B. Maxfield,* for the appellee (plaintiff).

KEELER, J.  The defendant appeals from the action of the trial court in refusing to make certain corrections in its finding of facts, and also from certain alleged errors in the court's conclusion of law upon the facts found.  A careful examination of the evidence printed, together with the exhibits made part of the finding, discloses the fact that none of the findings of the court were made without evidence, and that none of the corrections contradictory of the court's findings are established by undisputed evidence.  Some of the corrected findings suggested by defendant are constructions of the exhibits in the case, which latter are part of the case on appeal, and are in themselves amply sufficient to enable the defendant to make all of the claims of law set forth in his brief.  There is nothing in the record to call for any correction.

The defendant's reasons of appeal also make certain assignments of error, apart from these relating to correction of the finding, which however his counsel state may be grouped under four heads as contained in his brief, and this grouping will be followed in their consideration.

The first point is that "the plaintiff did not prove that he was ready, willing and able to perform his engagements under the contract."  The court has found as a matter of fact that he was ready, willing and able, and the defendant must be taken to mean that the subordinate facts found do not support the ultimate finding.  In support of this contention, defendant adduces the following facts appearing from the findings and exhibits: that the property as conveyed by Alenier

to Morris was subject to mortgages aggregating $500 in excess of the mortgages agreed to be given by defendant to plaintiff; also that the property stood in the name of Morris personally and not in the name of defendant; further, that a lease existed to June 30th, in favor of James Bruce, the original owner, who was in possession, based on a reservation in the original contract of sale given by him to Perlroth; likewise, that plaintiff's offer of performance was contained in a proposed deed by which DeSanto assumed mortgages of $500 in excess of the provisions of the contract; and finally, that in this deed there was no provision for financing the mortgages on the Kensington Street property as provided for in the contract of sale. The facts so stated are true, and found by the court either directly or appearing from the exhibits. They do not in any way, however, conflict with the court's finding that plaintiff was ready to perform. It is true that the proposed deed, not executed, from plaintiff to defendant, was incorrectly drawn, and would not have been a good tender under the contract; but it by no means follows that this deed would have been in fact tendered, or that the other objections would not have been removed had the deal gone forward to performance, which latter was prevented by defendant's direct refusal to perform, and left plaintiff under no obligation to further continue his preparations for closing title. The plaintiff potentially had title, held for him in the name of Morris, and it is not to be presumed that he was without power to arrange all matters so as to carry out performance.

Defendant's second point is that "the Bruce lease was an incumbrance which violated the terms of the contract." As appears in the above finding of facts, the trial court found that this lease was by consent of the parties included in the adjustment of rents

Romanoff v. DeSanto.

provided for in the contract, and further that the parties did not consider it as an incumbrance in their bargaining. This being so, the construction should be according to the intention of the parties to the contract. Inasmuch as they provided for its consideration at the time of closing title in accordance with the view above stated, the court in its holding as matter of law committed no error in the conclusion reached in that regard. How complete and clear was the understanding of the defendant regarding the transaction, is evidenced by the finding (supported by a lease, one of the exhibits in the case) that the day after the contract between the parties was executed, and before the time fixed for closing title and taking possession by him, he leased the greenhouse for a term beginning July 1st, 1923. It is also highly significant that the deed from Bruce to Alenier in stating the incumbrances on the property, makes reference only to building lines and two mortgages, ignoring as an incumbrance his own right to occupy the greenhouse during June, 1923, and making no reservation regarding the same. Morris could have sold the property to an innocent purchaser, free from Bruce's right of occupancy.

As a third point, defendant contends that the court erred in admitting testimony as to the oral agreement regarding the Bruce lease in connection with the written contract of sale, on which this action is founded. It will be noted that this right of Bruce was secured to him in his contract of sale with Perlroth, as appears in the finding, whereby he was to occupy his house and greenhouse until June 30th, 1923. The parties in argument, and the trial judge in his finding, calls this right a lease; it was in effect a lease for one month, and evidently the parties to the contract in suit so regarded it when they bargained at the time of making the contract, which it will be remembered contained a

provision as to adjustment of rents. This evidence was admitted without objection during the argument, inasmuch as the court was willing to go into the matter fully, since the subject had not been fully developed in testimony before given. This appears from the record printed for the purposes of correction, to which we may refer to explain the finding of the court. The court had the right in its discretion to hear this testimony at that point of the trial. Defendant does not stress the point of the inadmissibility of the evidence as such with relation to this part of the transaction, but claims that the conclusion derived from this testimony, and all other testimony of like nature adduced at the trial, has no place in the case, since it was an attempt to add to the written contract, matter supplementing and modifying it. If this was the effect of the testimony and the conclusion derived therefrom, defendant's contention would have merit, but we do not consider this to be the case. This agreement was one that by itself could be concluded orally, in effect, as we have said, a lease for one month. It should be noted that this minor contract is in no way contradictory of the written agreement; whatever force it may have is supplementary. Such subsidiary and collateral parol agreements are not uncommon in taking care of some minor detail in connection with a written contract of sale; the right to remove a small building, or to take minor crops are often dealt with in this way. We have recognized this doctrine; that is, that where the parties to an agreement do not intend to embody their entire oral agreement in the writing, the rule invoked by the defendant does not apply. *Strakosch* v. *Connecticut Trust & Safe Deposit Co.*, 96 Conn. 471, 479, 480, 114 Atl. 660, and cases there cited, particularly: *Hall* v. *Solomon*, 61 Conn. 476, 482, 23 Atl. 876; *Averill* v. *Sawyer*, 62 Conn. 560, 568, 569, 27

Atl. 73; *Caulfield* v. *Hermann,* 64 Conn. 325, 327, 30 Atl. 52.

Finally, defendant insists that there is no legal basis for the damages awarded plaintiff of $250 for commission paid to real estate agents, on the ground that the general purport of the contract of sale shows that commissions were only to be paid for effecting exchange, and not for bringing the parties together in an agreement for exchange. We fail to gather such an intent from the agreement, especially as the statement as to commissions stands by itself, not in any way connected with or subordinated to any other action contemplated by the parties to the contract. The instrument simply says: "Said Morris [plaintiff's agent] to pay Green and Polsky $250." The trial court found the defendant obligated to pay this sum, as part of plaintiff's damages, and there is nothing in the facts found or in the exhibits to show that the conclusion is incorrect.

There is no error.

In this opinion the other judges concurred.