JOSEPH ROMANIELLO *v.* ORLANDO PENSIERO ET AL.
(7797)

DUPONT, C. J., DALY and LAVERY, Js.

Argued October 17, 1989—decision released March 20, 1990

*Mark F. Katz,* for the appellants (defendants).
*Dennis G. Eveleigh,* for the appellee (plaintiff).

DUPONT, C. J. The defendants appeal from the judgment of the trial court granting specific performance to the plaintiff, pursuant to the recommendation contained in the report of an attorney trial referee.

The referee found certain facts. The plaintiff and the defendants executed a six year lease agreement on property owned by the defendants, commencing on April 15, 1983, and ending on March 15, 1989. The agreement provided that upon written notice, the plaintiff could exercise an option to purchase the property for its fair market value at any time during the term of the lease. It also provided that, in the event of a disagreement as to the fair market value at the time of the exercise of the option, the parties could submit that issue to arbitration. Pursuant to the terms of the agreement, the plaintiff exercised his option to buy the premises, but the parties could not agree on the purchase price. On October 26, 1987, arbitrators established that the fair market value of the property as of that date was $475,000. That valuation was not disputed but a disagreement arose over the preparation of a contract[1] and the time and place of the closing.

---

[1] The referee found that in June, 1986, after receiving notice of the plaintiff's intent to exercise his option, the defendants had sent the plaintiff, pursuant to the original agreement, a customary real estate contract that recited a purchase price of $500,000. After the dispute in price had been

The referee concluded, on the basis of a series of letters exchanged by the parties' attorneys, that the defendants had breached the agreement by refusing to prepare a new sales contract and by notifying the plaintiff that they considered the option terminated. The referee also found that the plaintiff had sufficiently proven his ability to purchase the property for $475,000 by producing a mortgage commitment and other evidence of his financial condition. Despite this latter finding, the referee further concluded that the defendants' breach excused the plaintiff from proving his financial ability to purchase the property.

The issue on appeal is whether the trial court should have accepted the attorney trial referee's recommendation. The defendants argue that the court erred in accepting the referee's recommendation because the referee improperly excused the plaintiff from proving his ability to purchase the property. They also argue that, because the plaintiff needed a mortgage to purchase the property, and because he did not obtain a mortgage commitment until June 3, 1988, he was not ready, willing and able to purchase until that date. They further claim that the mortgage commitment obtained by the plaintiff was not binding because it contained many contingencies that the plaintiff had not proven were fulfilled. The defendants argue, therefore, that the plaintiff was not ready, willing and able to purchase the premises and that the attorney trial referee should not have recommended specific performance.

If the referee were correct in excusing the plaintiff from proving his ability to purchase the property, then the plaintiff's actual ability to purchase would be irrelevant. The first question to be resolved, therefore, is

resolved by arbitration, the plaintiff requested and the defendants refused to prepare a new sales contract with the agreed upon price. The option agreement provided that a closing would take place thirty days after the execution of the sales contract.

whether, in every instance where a seller has breached a contract of sale, the buyer must nevertheless prove that he was ready, willing and able to effectuate the sale before he can be entitled to the remedy of specific performance.

It is well settled that a buyer seeking specific performance has the burden of proving that he or she is ready, willing and able to purchase the premises, even when a seller refuses to participate in or attend a closing, or has failed to satisfy a condition of the contract. *DiBella* v. *Widlitz,* 207 Conn. 194, 200, 541 A.2d 91 (1988); *Frumento* v. *Mezzanotte,* 192 Conn. 606, 616, 473 A.2d 1193 (1984). The defendants are correct, therefore, in their assertion that their breach did not excuse the plaintiff from proving that he was ready, willing and able to purchase the realty.

The defendants next claim, contrary to the referee's findings, that the plaintiff failed to prove that he was ready, willing and able to perform the contract at any time prior to June, 1988. That determination is a question of fact. *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.,* 148 Conn. 21, 26, 166 A.2d 710 (1960). Similarly, the determination of a closing date in a case where that date is disputed is also a question of fact. *DiBella* v. *Widlitz,* supra, 198. We will not reverse or modify a trial court's acceptance of a referee's finding of fact unless it is clearly erroneous in view of the evidence and the pleadings in the whole record. Id.; *Frumento* v. *Mezzanotte,* supra, 617–18.

In the present case, the parties never set a closing date because of the defendants' refusal to prepare a contract. The referee's findings implied that the earliest possible closing date was October 26, 1987. The evidence supports that implication because, prior to that date, the parties had not agreed upon a purchase price. Without a price, the parties would have been unable

to close and the plaintiff would never have been able to show that he was financially able to purchase the property.

The attorney trial referee also found that the plaintiff was financially able to purchase the premises for $475,000 as of the date of the trial, and that the plaintiff's financial condition on October 26, 1987, remained unchanged as of the date of trial in June, 1988. This finding was based on evidence that included the plaintiff's bank and financial statements and a mortgage commitment dated June 3, 1988. The defendants seem to be claiming that this evidence was insufficient as a matter of law, and that the plaintiff could have proven his ability to perform only by showing either that he had available cash or a binding mortgage commitment at all times after October 26, 1987.

Although a plaintiff seeking specific performance of a sales contract must prove that he was ready, willing and able to effectuate the sale, he need not make a formal tender of the purchase price in the event that the defendant breaches the contract. *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 18, 420 A.2d 1142 (1979); *Vachon* v. *Tomascak,* 155 Conn. 52, 57, 230 A.2d 5 (1967). The law does not require a party to proceed with preparations for performance if such preparations would be futile. *Vachon* v. *Tomascak,* supra. Here, the plaintiff was not required to attend a closing that was never scheduled or to seek a mortgage commitment before a sales contract had been prepared. Such acts, in light of the defendants' refusal to perform, would indeed have been futile, since mortgage commitments are based on particular values at particular points in time and are not valid indefinitely. The plaintiff proved to the satisfaction of the referee that he *could* have obtained a mortgage commitment at any time between October 26, 1987, and June, 1988.

The defendants finally claim that the bank that extended the mortgage commitment to the plaintiff "was in no way bound to provide those funds because of the large number of contingencies set forth within the commitment," and that, therefore, the referee erred in considering the commitment as evidence of the plaintiff's ability to purchase. It is true that a proposed purchaser cannot be said to be able to purchase when he is dependent on third parties who are in no way bound to furnish the funds. *Frumento* v. *Mezzanotte,* supra, 617; *Peter M. Chalik & Associates* v. *Hermes,* 56 Wis. 2d 151, 161, 201 N.W.2d 514 (1972). This line of reasoning, however, has not been extended to cover situations in which a purchaser obtains a mortgage commitment from a bank. In *Frumento,* the plaintiff had no such commitment, but merely testified that he knew he could borrow the necessary money from his father. *Frumento* v. *Mezzanotte,* supra, 615. Here, the plaintiff produced a valid mortgage commitment. The fact that the commitment contained several customary contingencies does not affect its validity. None of the contingencies is related to the plaintiff's financial condition and several, such as the requirement that the borrower pay all closing costs, could not be fulfilled until the actual closing.

Specific performance is a broad equitable remedy that is discretionary with a trial court and its granting is not subject to reversal upon appellate review unless the trial court acted in a clearly erroneous manner. *Smith* v. *Hevro Realty Corporation,* 199 Conn. 330, 345, 507 A.2d 980 (1986); *Frumento* v. *Mezzanotte,* supra, 615, 617. Since the referee was correct in finding that the plaintiff proved that he was ready, willing and able to purchase the property, the trial court was also correct in rendering a judgment of specific performance based on the referee's factual finding. See *Dills* v. *Enfield,*

210 Conn. 705, 713, 557 A.2d 517 (1989); *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.,* 20 Conn. App. 420, 423–24, 567 A.2d 1250 (1989).

There is no error.

In this opinion the other judges concurred.